# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| CORTNEY A. DOWNS, | ) |  |
|---|---|---|
| Plaintiff | ) ) ) | |
| v. | ) ) | No. 2:13-cv-02-DBH |
| CAROLYN W. COLVIN,<br>*Acting Commissioner of Social Security,*[1] | ) ) ) ) | |
| Defendant | ) | |

## REPORT AND RECOMMENDED DECISION[2]

This Social Security Disability ("SSD") appeal raises the question of whether the administrative law judge supportably found the plaintiff capable of performing work existing in significant numbers in the national economy. The plaintiff seeks reversal and remand on the bases that the administrative law judge (i) applied the wrong medico-legal standard in assessing the effects of her fibromyalgia, (ii) made an unsupported credibility determination, and (iii) erroneously failed to adopt the opinion of her treating physician, John Pelletier, D.O. *See* Itemized Statement of Errors Pursuant to Local Rule 16.3 Submitted by Plaintiff ("Statement of Errors") (ECF No. 12) at 2-18. I agree that the administrative law judge failed to supply supportable reasons for either his partial rejection of the plaintiff's alleged limitations or his

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Carolyn W. Colvin is substituted as the defendant in this matter.

[2] This action is properly brought under 42 U.S.C. § 405(g). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), as amended January 1, 2013, which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me on December 12, 2013, pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

1

rejection of Dr. Pelletier's opinion.  Hence, I recommend that the court reverse the decision and remand this case for further proceedings.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. § 404.1520; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff met the insured status requirements of the Social Security Act through September 30, 2009, Finding 1, Record at 27; that, through her date last insured, she had severe impairments of fibromyalgia, asthma, and obesity, Finding 3, *id*.; that, through her date last insured, she had a sedentary lifting capacity, could stand/walk for two hours out of an eight-hour day with normal breaks, could sit for six hours out of an eight-hour day with normal breaks, was not limited in her ability to climb ramps or stairs but could not climb ladders, ropes, or scaffolds, could frequently balance, could occasionally stoop, kneel, crouch, and crawl, needed to avoid temperature extremes of cold, wetness, and humidity, needed to avoid vibratory surfaces, respiratory irritants, and rough or uneven walking surfaces, was limited to simple, routine, and repetitive tasks, and required a low-stress job, defined as one in which changes in the work setting were occasional, Finding 5, *id*. at 28-29; that, considering her age (34 years old, defined as a younger individual, on her date last insured), education (high school equivalent), work experience (transferability of job skills immaterial), and residual functional capacity ("RFC"), there were jobs existing in significant numbers in the national economy that she could perform, Findings 7-10, *id*. at 31; and that she, therefore, was not disabled from her alleged disability onset date, December 31, 2007, through her date last insured, September 30, 2009, Finding 11, *id*. at 32.[3]  The Appeals Council declined

---

[3] "To be eligible to receive SSD benefits [a] plaintiff had to have been disabled on or before [his or] her date last insured[.]" *Chute v. Apfel*, No. 98-417-P-C, 1999 WL 33117135, at *1 n.2 (D. Me. Nov. 22, 1999) (rec. dec., *aff'd* Dec. 20, 1999).

to review the decision, *id*. at 1-3, making it the final determination of the commissioner, 20 C.F.R. § 404.981; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. § 405(g); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than her past relevant work. 20 C.F.R. § 404.1520(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

## I. Discussion

### A. Background

The administrative law judge acknowledged that the plaintiff testified that she "experienced chronic neck, shoulder, back, hip and arm pain[,]" "experienced fatigue[,]" "could lift and carry approximately ten pounds[,]" and "could sit for sixty minutes, stand for ten minutes and walk for seven to eight minutes[,]"; however, he found her statements "not entirely credible in light of her medical history and the reports of the treating and examining physicians[,]" and deemed her reported intensity of pain and degree of incapacity "inconsistent with the medical

evidence of record, as . . . discussed in greater detail below." Record at 29 (citation omitted). He also considered the August 3, 2011, report of consulting rheumatologist Stephanie D. Gartner-Fanburg, M.D., and the September 12, 2011, opinion of Dr. Pelletier, who had the benefit of review of the Gartner-Fanburg report, but did not find that they supported the plaintiff's subjective allegations of disabling symptomatology. *See id*. at 30-31.

On neurological examination of the plaintiff, Dr. Gartner-Fanburg found, *inter alia*, that "[g]reater than 50% of fibromyalgia tender points are positive." *Id*. at 547. She concluded that, in view of the plaintiff's "chronic generalized pain and tenderness[,]" the lack of evidence of inflammatory degenerative arthritis, and the doubtfulness of the existence of other inflammatory disease, she agreed that the "most likely diagnosis is fibromyalgia[,]" which fit "both clinically and with her laboratory studies." *Id*.

Dr. Pelletier stated, in a letter to the plaintiff's attorney dated September 12, 2011, responding to a request for his opinion concerning the plaintiff's symptomatology and whether her reported symptoms and physical limitations were consistent with her diagnoses of fibromyalgia and somatic dysfunction:

> I have reviewed [the plaintiff's] file, and the memo in which you outlined [her] description of her symptoms and limitations over the past four to five years. In my opinion, the symptoms she describes are fully consistent with her diagnoses of fibromyalgia and somatic dysfunction, and the resulting physical limitations which she describes are consistent with those conditions.

*Id*. at 553.[4]

The administrative law judge observed that Dr. Gartner-Fanburg (i) failed to identify the number or location of the tender points that she found and (ii) examined the plaintiff in August

---

[4] The memo to which Dr. Pelletier refers is contained at page 273 of the Record and consists of the plaintiff's report to her counsel of the limitations in sitting, standing, walking, lifting, bending, energy level, and memory that she had experienced for the prior four or five years because of her fibromyalgia. *See* Record at 270-73.

4

2011, almost two years after the plaintiff's date last insured of September 30, 2009. *See id.* at 30.

He also noted, more generally, that, although there were references to fibromyalgia in the treatment notes, "the record does not contain a description of the specified number of tender points consistent with a diagnosis of fibromyalgia." *Id.* (citation omitted). He stated, "The American College of Rheumatology Criteria for Classification of Fibromyalgia requires pain on digital palpation in eleven of eighteen tender point sites[.]" *Id*. at 29-30. He observed that "[n]o treating or examining source of record[,]" including Dr. Gartner-Fanburg, "described the specified number or location of tender points." *Id*. at 30. He added:

> Treatment notes covering the period of time from the amended alleged onset date through the date last insured[] describe no significant abnormalities of gait, joint range of motion, sensation or motor strength. While the [plaintiff] alleged significant joint pain and fatigue, the [plaintiff] was consistently described as alert, oriented and pleasant with normal mood and affect. She was also consistently described as being in acute distress.

*Id*. (citations omitted).

The administrative law judge stated that he found the Pelletier opinion unpersuasive, explaining:

> Treatment notes from Dr. Pelletier covering the period of time at issue do not describe diagnoses of fibromyalgia or somatic dysfunction. Dr. Pelletier's treatment notes do not describe the number or location of tender points consistent with fibromyalgia. Dr. Pelletier's treatment notes do not describe any significant clinical abnormalities. In his letter from September of 2011, Dr. Pelletier described no clinical or laboratory findings to support his opinion. Dr. Pelletier described almost exclusive reliance on the [plaintiff's] subjective allegations. The clinical evidence of record, as described above, does not support the [plaintiff's] subjective complaints. No treating or examining source of record described the specified number or location of tender points. Treatment notes covering the period of time from the amended alleged onset date through the date last insured describe no significant abnormalities of gait, joint range of motion or motor strength. The [plaintiff] was consistently described as alert, oriented and pleasant with normal mood and affect. She was also consistently described as being in no acute distress. Dr. Pelletier's reliance on the [plaintiff's] subjective allegations

5

undermines his conclusions as such allegations are not supported by the evidence of record.

*Id.* at 30-31 (citations omitted).

### B. Credibility Determination

"The credibility determination by the ALJ, who observed the claimant, evaluated his demeanor, and considered how that testimony fit in with the rest of the evidence, is entitled to deference, especially when supported by specific findings." *Frustaglia v. Secretary of Health & Human Servs.,* 829 F.2d 192, 195 (1st Cir. 1987) (citation omitted).

As noted above, the administrative law judge partially discounted the plaintiff's credibility on three bases: that (i) he doubted the validity of her fibromyalgia diagnosis, (ii) treatment notes failed to reflect any significant abnormalities of gait, joint range of motion, sensation, or motor strength, and, (ii) despite her claims of significant fatigue and joint pain, she consistently was described as alert, oriented, and pleasant with normal mood and affect and in no acute distress. *See* Record at 29-30. None of these rationales withstands scrutiny.

First, the plaintiff correctly observes that the administrative law judge conflated two analyses: whether she suffered from a medically determinable severe impairment of fibromyalgia and, if so, whether it was disabling. *See* Statement of Errors at 3-10. As counsel for the commissioner acknowledged at oral argument, doubts regarding the fibromyalgia diagnosis had no bearing on the question at hand: the extent to which the plaintiff's severe impairment of fibromyalgia imposed functional limitations.[5]

---

[5] The plaintiff argued that the administrative law judge further erred in applying outmoded 1990 American College of Rheumatology ("ACR") diagnostic criteria, which rely on a finding of at least 11 of 18 specified tender points on examination, rather than the ACR's 2010 diagnostic criteria, which entail the application of a Widespread Pain Index and a Symptom Severity Scale. *See* Statement of Errors at 5-10. The commissioner rejoined, *inter alia,* that the administrative law judge's application of the "11 out of 18" tender points standard was consistent with the existing practice of this court and others in the First Circuit as well as with the subsequently published Social Security Ruling 12-2p ("SSR 12-2p"), which permits a finding of a medically determinable impairment of
(*continued on next page*)

Second, as the plaintiff's counsel pointed out at oral argument, the specific findings on examination to which the administrative law judge referred have no relevance to the assessment of limitations flowing from a fibromyalgia diagnosis.

The First Circuit has observed that once an administrative law judge accepts the diagnosis of fibromyalgia, he or she "ha[s] no choice but to conclude that the claimant suffered from the symptoms usually associated with such condition, unless there was substantial evidence in the record to support a finding that claimant did not endure a particular symptoms or symptoms." *Johnson v. Astrue*, 597 F.3d 409, 414 (1st Cir. 2009) (citation, internal punctuation, and emphasis omitted).

As the commissioner contends, *Johnson* does not stand for the proposition that an administrative law judge who finds a severe impairment of fibromyalgia must accept a claimant's allegations regarding the extent of his or her limitations at face value. *See* Opposition at 5-6; *Breingan v. Astrue*, No. 1:10-cv-92-JAW, 2011 WL 148813, at *8 (D. Me. Jan. 17, 2011) (rec. dec., *aff'd* Feb. 22, 2011) (observing, post-*Johnson*, that administrative law judge properly pointed to substantial evidence that, as of claimant's date last insured, her fibromyalgia did not "impose disabling (or, for that matter, chronic, widespread) pain[,]" including medical evidence and the claimant's own statements that symptoms of joint pain and weakness were not persistent, and medications appeared to help); *O'Brien v. Astrue*, Civil Docket No. 09-154-P-S, 2010 WL 583951, at *4-*5 (D. Me. Feb. 16, 2010) (observing, post-*Johnson*, that administrative law judge properly considered whether there was a lack of objective evidence suggesting that claimant's

---

fibromyalgia based on either the 1990 "11 out of 18" tender points standard or the 2010 ACR Preliminary Diagnostic Criteria. *See* Defendant's Opposition to Plaintiff's Itemized Statement of Errors ("Opposition") (ECF No. 19) at 2-6; SSR 12-2p, reprinted in *West's Social Security Reporting Service* Rulings 1983–1991 (Supp. 2013), at 461-63. Because I find that the administrative law judge generally erred in taking into consideration doubts regarding the fibromyalgia diagnosis as part of his discussion of the extent of the plaintiff's fibromyalgia-related limitations, I need not consider whether he separately erred in applying the 1990 rather than the 2010 ACR criteria.

7

fibromyalgia was disabling). *See also Boardman v. Prudential Ins. Co. of Am.*, 337 F.3d 9, 16 n.5 (1st Cir. 2003) ("While the diagnoses of chronic fatigue syndrome and fibromyalgia may not lend themselves to objective clinical findings, the physical limitations imposed by the symptoms of such illnesses do lend themselves to objective analysis.").

However, *Johnson* does stand for the proposition that it is error to discount claimed fibromyalgia-related limitations on the basis of a lack of objective findings on examination. *See Johnson*, 597 F.3d at 412 (administrative law judge wrongly discounted treating physician's RFC assessment on the basis of "relatively benign" findings on examination but for the presence of trigger points; "since trigger points are the only 'objective' signs of fibromyalgia, the ALJ effectively was requiring objective evidence beyond the clinical findings necessary for a diagnosis of fibromyalgia under established medical guidelines, and this, we think, was error.") (citations, internal punctuation, and emphasis omitted). *See also, e.g., Paulson v. Colvin*, Civil Action No. 12-cv-01979-CMA, 2013 WL 4046692, at *4 (D. Colo. Aug. 9, 2013) ("persons suffering from fibromyalgia manifest normal muscle strength and neurological reactions and have a full range of motion") (citation and internal quotation marks omitted).

Third, as the plaintiff points out, *see* Statement of Errors at 11, notations that a patient is alert, oriented, and pleasant with normal mood and affect typically bear on the patient's mental status, *see, e.g*., Listing of Impairments, Appendix 1 to 20 C.F.R. Part 404, Subpart P, § 12.00(B) (noting, in addressing need for medical evidence of mental disorders, "Psychiatric signs are medically demonstrable phenomena that indicate specific psychological abnormalities, e.g., abnormalities of behavior, mood, thought, memory, orientation, development, or perception, as described by an appropriate medical source."). Such notations therefore have no direct bearing on the extent of a patient's physical limitations. In any event, the commissioner acknowledges

8

that these notations, as well as the notation of no acute distress, are not inherently inconsistent with a claim of chronic fibromyalgia-related pain. *See* Opposition at 8-9. She argues that these "consistently positive observations do tend to suggest that Plaintiff's pain was not persistent or overwhelming[.]" *Id*. at 9. Nonetheless, the relevance of the notations is sufficiently attenuated that they cannot serve as the sole support for the administrative law judge's credibility determination.

For these reasons, the credibility determination is unsupported by substantial evidence. That, in itself, warrants reversal and remand.[6]

## C. Rejection of Treating Physician's Opinion

The plaintiff also faults the administrative law judge's rejection of Dr. Pelletier's September 12, 2011, opinion, as buttressed by the August 3, 2011, opinion of consulting rheumatologist Dr. Gartner-Fanburg, on the basis, *inter alia*, that the administrative law judge failed to supply supportable reasons for that rejection. *See* Statement of Errors at 15-18. I agree.

A treating source's opinion on the nature and severity of a claimant's impairments is entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and . . . not inconsistent with the other substantial evidence in [the claimant's] case record[.]" 20 C.F.R. § 404.1527(c)(2). However, the question of a

---

[6] The plaintiff further argues that the administrative law judge erred in failing to articulate which of her statements he credited or discredited, instead relying on "meaningless boilerplate" to the effect that he did not credit allegations more restrictive than set forth in his RFC determination. *See* Statement of Errors at 12-15. She urges this court to consider the views of Circuit Judge Richard Posner, of the United States Court of Appeals for the Seventh Circuit, regarding "meaningless boilerplate" in Social Security credibility assessments that "yields no clue to what weight the trier of fact gave the testimony[.]" *See id*. at 14-15 (quoting *Bjornson v. Astrue*, 671 F.3d 640, 644-45 (7th Cir. 2012) (citations and internal quotation marks omitted)). In my view, boilerplate of the kind decried by the plaintiff makes sufficiently clear which allegations were credited – those consistent with the assessed RFC. Reversal and remand, hence, are not warranted on the basis of this particular point. *See, e.g., Reynolds v. Astrue*, No. 07-5-B-W, 2007 WL 3023573, at *6 (D. Me. Oct. 12, 2007) (rec. dec., *aff'd* Oct. 30, 2007) ("Contrary to the plaintiff's suggestion, there is no statutory or regulatory requirement that the administrative law judge address separately each factor to be considered in evaluating credibility or each work activity that might be affected by a plaintiff's allegations of pain. The case law cited by the plaintiff does not create such a requirement.").

9

claimant's RFC is among issues reserved to the commissioner, with respect to which even the opinion of a treating source is entitled to no "special significance" and cannot be assigned controlling weight. *Id.* § 404.1527(d)(2)-(3); Social Security Ruling 96–2p, reprinted in *West's Social Security Reporting Service* Rulings 1983–1991 (Supp. 2013) ("SSR 96–2p"), at 112.

When a treating source's opinion is not given controlling weight, it is weighed in accordance with enumerated factors. *See* 20 C.F.R. § 404.1527(c)(2). An administrative law judge may give the opinion little weight or reject it, provided that he or she supplies "good reasons" for so doing. *See, e.g., id.* ("[The commissioner] will always give good reasons in [her] notice of determination or decision for the weight [she] give[s] [a claimant's] treating source's opinion."); Social Security Ruling 96–5p, reprinted in *West's Social Security Reporting Service* Rulings 1983–1991 (Supp. 2013) ("SSR 96–5p"), at 127 (even as to issues reserved to the commissioner, "the notice of the determination or decision must explain the consideration given to the treating source's opinion(s)"); Social Security Ruling 96–8p, reprinted in *West's Social Security Reporting Service* Rulings 1983–1991 (Supp. 2013) ("SSR 96–8p"), at 150 (an administrative law judge can reject a treating source's opinion as to RFC but "must explain why the opinion was not adopted"). Slavish discussion of the relevant factors is not required. *See, e.g., Golfieri v. Barnhart,* No. 06–14–B–W, 2006 WL 3531624, at *4 (D. Me. Dec. 6, 2006) (rec. dec., *aff'd* Dec. 29, 2006).

The administrative law judge rejected the Pelletier opinion on the same bases as he partially discredited the plaintiff's allegations: that Dr. Pelletier (i) did not diagnose fibromyalgia or describe the number or location of tender points consistent with that disease, (ii) did not describe any significant clinical abnormalities, specifically, abnormalities of gait, joint range of motion, or motor strength, (iii) relied almost exclusively on the plaintiff's subjective allegations,

10

and (iv) consistently described the plaintiff as alert, oriented, and pleasant, with normal mood and affect, and in no acute distress. *See* Record at 30-31.

As discussed above and explained in *Johnson*, the first three rationales reflect a misunderstanding of fibromyalgia and, hence, do not constitute good reasons for discounting the opinion, *see Johnson*, 597 F.3d at 412, and the fourth has such marginal relevance that it is too thin a reed on which to predicate the rejection. Reversal and remand, accordingly, is independently warranted on this basis.[7]

### D. Crafting of RFC From Raw Medical Evidence

The plaintiff makes a final point at the outset of her statement of errors: that, having in essence rejected all three expert RFC opinions of record, the administrative law judge impermissibly determined the plaintiff's RFC from the raw medical evidence of record. *See* Statement of Errors at 2 & n.1.[8] Although an administrative law judge is not precluded from "rendering commonsense judgments about functional capacity based on medical findings," he or she "is not qualified to assess residual functional capacity based on a bare medical record." *Gordils v. Secretary of Health & Human Servs.,* 921 F.2d 327, 329 (1st Cir. 1990).

---

[7] The plaintiff alternatively contends that the administrative law judge was obliged to adopt the Pelletier opinion on either of two bases: because it was (i) "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record[,]" Statement of Errors at 17 (quoting 20 C.F.R. § 404.1527(d)(2)), or (ii) the only expert RFC opinion of record besides two agency consultant opinions that the administrative law judge implicitly rejected, *see id*. She does not make a persuasive bid for reversal and remand on these bases. It is not clear that Dr. Pelletier offered the type of opinion that must be afforded controlling weight, *i.e.*, an opinion on "the nature and severity" of the plaintiff's impairments. He merely stated that her claimed limitations were consistent with her diagnosis of fibromyalgia. While this tends to bolster her allegations, it is not an opinion that she did have the claimed limitations. She offers no authority in support of the proposition that, if an administrative law judge rejects agency consultants' less plaintiff-friendly RFC opinions, he or she must adopt a sole remaining treating physician RFC opinion of record. *See id.* at 17. Such a rule would run counter to the authorities cited above, which define the circumstances in which administrative law judges must afford controlling weight to treating source opinions and make clear that they otherwise retain discretion to reject or give less weight to such opinions upon supplying good reasons for doing so.

[8] The record contains two agency consultant RFC opinions, that of Lawrence P. Johnson, M.D., finding no severe medically determinable impairment as of the plaintiff's date last insured, *see* Record at 412, and that of Richard T. Chamberlin, M.D., finding insufficient evidence to assess the plaintiff's RFC as of her date last insured, *see id*. at 435. The administrative law judge did not refer to either opinion, and fairly can be said to have implicitly rejected both.

11

At oral argument, counsel for the commissioner conceded this error. However, she contended that the error was harmless because, having supportably discounted Dr. Pelletier's opinion, the administrative law judge assessed an RFC more favorable to the plaintiff than the record supports. *See also* Opposition at 13-14. As noted above, the administrative law judge made neither a supportable credibility determination nor a supportable rejection of the Pelletier opinion. The error, accordingly, is not harmless.

## II. Conclusion

For the foregoing reasons, I recommend that the decision of the commissioner be **VACATED** and the case **REMANDED** for further proceedings consistent herewith.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum and request for oral argument before the district judge, if any is sought, within fourteen (14) days after being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 27th day of December, 2013.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge